MEMO ENDORSED



10/18/2022

This motion is identical to that filed at ECF No. 138. Therefore, this motion is terminated as a duplicative filing. Clerk of Court is requested to terminate only the motion at ECF No. 139. Dated: White Plains, NY
                     Oct. 18, 2022

SO ORDERED:

HON. NELSON S. ROMÁN
UNITED STATES DISTRICT JUDGE

October 15, 2022

Honorable Nelson S. Roman
United States District Judge
United States District Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

By: ECF and Email/PDF

           Re:    *United States v. Trevor Edwards*, **19 Cr. 80 (NSR)** -02
                     **Letter Motion to Reconsider and Grant Defendant's**
                     **Prior Compassionate Release/Reduction in Sentence**
                     **Application Pursuant to 18 USC §3582(c)(1)(A)**

Dear Judge Roman:

    I was re-appointed to represent the defendant, Trevor Edwards, pursuant to CJA (ECF Doc No. 128) to assist him with his previously filed motion to reduce his sentence pursuant to 18 USC §3582(c)(1)(A) (ECF Doc No. 122) ("pro se motion"). I adopt the defendant's comprehensive and well-supported pro se motion, and exhibits, in which he details the reasons why the Court should reconsider its denial of relief (ECF Doc No. 92) ("Court Order") asking that such relief now be granted. For purposes of brevity, I hereby request to incorporate the arguments made in my prior Letter Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 USC §3582(c)(1)(A), and exhibits, (ECF Doc No. 84); and Defense Sur-Reply to the Government's Opposition for Relief (ECF Doc No. 91), as if fully averred herein.

    The Court should re-examine its prior Court Order. Despite sympathizing with the defendant's predicament while acknowledging that his crime was non-violent (Court Order at 4), Your Honor held that his extraordinary and compelling health conditions did not overcome 18 USC §3553(a) sentencing factors of deterrence and the seriousness of the offense, to wit:

1

> "Defendant has only served approximately three months of his sentence, less than one percent of the sixty-month sentence imposed. While Defendant is correct that the amount of time Defendant has served does not alone preclude relief (ECF No. 91 at 2), releasing Defendant now, when he has served such a short portion of his sentence would not serve the principles of deterrence—especially in light of his criminal history—or reflect the seriousness of the crime he committed. See, e.g., United States v. Itzchaki, 2020 WL 4194800, at *2 (S.D.N.Y. July 21, 2020) (rejecting compassionate release in part because defendant had only "served approximately 14 percent of his sentence"); United States v. Zemlyansky, No. 12-CR-171-01 (JPO), 2020 WL 3638425, at *2 (S.D.N.Y. July 6, 2020) (denying compassionate release, in part because defendant had only served 5 years of a 15-year sentence); United States v. Danilovich, No. 12-CR-171-02 (JPO), 2020 WL 3642246, at *2 (S.D.N.Y. July 6, 2020) (denying request for compassionate release where defendant was four years into a 25-year sentence). *Even in the case upon which Defendant relies as support for his arguments, the defendant had served significantly more time in prison and a higher percentage of his sentence.* United States v. Delgado, 457 F. Supp. 3d 85, 87 (D. Conn. 2020) (reducing sentence from 120 months to 60 months' supervised release after defendant had served *29 months or roughly two percent* of original 120-month sentence).
>
> As such, *while the Court is not unsympathetic to the increased risks Defendant faces from his underlying health conditions*, the Court finds that the 18 U.S.C. § 3553(a) factors outweigh Defendants "extraordinary and compelling reasons" warranting compassionate release." *Id*. at 4-5 (Emphasis added).

The Second Circuit has made clear that § lB1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the Bureau of Prisons, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). Neither Application Note l(D), nor anything else in the now-outdated version of Guideline §1Bl.13, limits the district court's discretion." *Id.* at 237. Consistent with *Brooker*, in assessing a motion brought directly by a defendant, the Court is not constrained by either §1B1.13 's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(l)(A)(i), may "consider the full

2

slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." Id. at 237. For the reasons set forth herein, in the defendant's pro se motion, and in my prior application, I submit that these sentencing factors strongly favor a reduction in sentence and the defendant's release on Supervised Release.

Updating briefly some of the issues raised in my original application as well as in the pro se motion, Trevor to his credit has lost a significant amount of weight, weighing 256 pounds as of June 29, 2022. He nevertheless remains classified as "obese" by the Center for Disease Control ("CDC") at a BMI of 34.7,[1] and suffers from diabetes and high blood pressure. While he reported to medical staff on May 10, 2022 that he "feels great", that doesn't change that he remains at a much higher risk of falling seriously ill or dying if he were to contract Covid-19, based upon his multiple comorbidities and despite receiving the Covid-19 vaccine.[2] Trevor's risk of contracting the disease is exacerbated by his being incarcerated in close quarters with other inmates.[3]

As to the main concern expressed by the Court in denying the defendant's prior application, he has now been incarcerated for this case since September 29, 2020, a period of over two years, and has completed approximately 58% of his 60-month prison sentence, when factoring jail time credits including his positive participation in RDAP. With the exception of a minor administrative violation in March, 2022 (Ex. A), his one and only ticket since being incarcerated, Trevor has been a model inmate. He has availed himself of educational opportunities, completed numerous classes and earned certificates of completion as confirmed by Exhibit C to his pro se motion. As an update since that filing on February 28, 2022, the defendant has recently completed an AIDS Awareness class and is currently enrolled in a class to obtain a CDL driver's license (Ex. C).

In *Concepcion v. United States*, 597 U.S. ___ (2022), the Court held that in Section 404 motions under the First Step Act for retroactive application of the Fair Sentencing Act (the reduction in crack cocaine penalties), the sentencing court may consider ameliorative changes in the law since the original sentencing – even though the ameliorative changes themselves were not made retroactive:

> "There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her as an individual. Koon v. United States, 518 U. S. 81, 113 (1996)… The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings. Relying on Williams [v. New York, 337 U. S. 241 (1949)] and Koon, the Court in Pepper [v. United

---

[1] https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi_tbl.htm

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[3] Id.

3

States, 562 U. S. 476, 492 (2011)] found it "clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing." 562 U. S., at 490. Pepper reached that conclusion in light of the "federal sentencing framework" that allows sentencing judges to consider the " 'fullest information possible concerning the defendant's life and characteristics.' " Id., at 488, 490… "From the beginning of the Republic, federal judges were entrusted with wide sentencing discretion." K. Stith & J. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 9 (1998) (Stith & Cabranes). Federal courts historically have exercised this broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. *That discretion also carries forward to later proceedings that may modify an original sentence. Such discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence*."

Accordingly, federal courts resentencing individuals whose sentences were vacated on appeal regularly consider evidence of rehabilitation developed after the initial sentencing. See, e.g., United States v. Rodriguez, 2020 WL 2521551, *5 (SDNY, May 18, 2020) (considering the movant's "exemplary conduct during a lengthy period of incarceration"); United States v. Raifsnider, 2020 WL 1503527, *3 (D Kan., Mar. 30, 2020) (considering that the movant "has completed his GED, taken hundreds of hours of programming offered by the Bureau of Prisons, and is taking college classes"). Similarly, district courts in resentencing proceedings frequently consider evidence of violence and rule breaking in prison. See, e.g., United States v. Riley, 785 Fed. Appx. 282, 285 (CA6 2019) (considering a " 'series of disciplinary violations while in the Bureau of Prisons' "); United States v. Diaz, 486 Fed. Appx. 979, 980 (CA3 2012) (considering "infractions while in prison, e.g., possession of marijuana"). (Id.) (Emphasis added).

While the instant motion does not involve a sentence which was vacated on appeal as was the case in *Concepcion*, I submit that the clear language of the decision makes it applicable to any "proceeding that may modify an original sentence." Indeed, in the last two years, Trevor has shown "exemplary conduct" while incarcerated. He has

4

earned his GED, is currently enrolled in a CDL driver's license course and has completed scores of other BOP courses as listed in Exhibit C of the pro se motions and Ex. B in the instant motion. He one and only prior disciplinary ticket since his incarceration in this case, possession of a cellphone, certainly does not indicate "a series of disciplinary violations" as cited in *United States v. Riley*, supra.

The defendant has an excellent reentry plan should the Court grant relief. He would be living in his own bedroom in a private house in the Town of Newburgh (not the City of Newburgh) owned by Ms. Syreeta Hill, his cousin. As confirmed by Ms. Hill in my phone conversation with her, she is a 42-year-old social worker employed at Garnett Health Medical Center, in Middletown, New York. Also sharing the home is Syreeta's husband, Deshawn Ferrell, 42 years old, a warehouse worker who is currently on disability and Syreeta's 9-year-old daughter, London Maise. There are no firearms or pets in the home. Ms. Hill may be contacted at (845) 321-0050 should the Court, Government or Probation wish to speak with her.

Notably, Trevor has a job waiting for him upon his release from prison, as a box truck driver with ADS Shipping in Beacon, New York. I spoke with Mr. Anton Smith, the owner of ADS Shipping, who confirmed this information and that Trevor would be working full time for the company. Mr. Smith may be contacted at (914) 815-2056. Trevor also has excellent prospects for a second job, which would be resuming his prior employment that he had while on pretrial release for this case, as a driver for Amazon.

All of the sentencing goals pursuant to 18 U.S.C. § 3553(a): (1) promotion of respect for the law by imposing a term of imprisonment sufficient to demonstrate condemnation of the defendant's actions; (2) provide adequate deterrence to the defendant and others from future similar conduct; (3) protection for the public and (4) afford the opportunity for reformation and rehabilitation, now firmly support a reduction of sentence to spare the defendant the risk of death or serious physical consequences if he were to contract the Covid-19 virus. The particular §3553(a) factors that had concerned the Court, deterrence and condemnation sufficient for seriousness of the offense, clearly no longer outweigh the extraordinary and compelling health reasons for the defendant's release.

Due to the foregoing, I respectfully request that the Court reconsider the defendant's prior motion for compassionate release, and now grant him a reduction in sentence, to time served to be followed by 4 years' Supervised Release.

                                                Very truly yours,

                                                Tanner & Ortega, L.L.P.

                                                Howard E. Tanner

cc:       AUSA Samuel Raymond (By ECF and Email/PDF)